UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

MARY JO THOMAS, PENELOPE
SHAWASHENHURST,
MELISSA IMPENS, and
SEVEN STAR SANCTUARY AND
RESCUE, INC.,

              Plaintiffs,                        File No. 1:12-cv-00074

v.

                                                  HON. ROBERT HOLMES BELL

SUSAN BARRETT, PETER MACQUEEN,
PATRICIA LAMBERT, ANDIE
CAVANAUGH, and YOLANDA RIOS,

              Defendants.

_____/

**OPINION**

      Plaintiffs Mary Jo Thomas, Penelope Shaw-Ashenhurst, Melissa Impens and Seven

Star Sanctuary and Rescue, Inc. ("Plaintiffs") commenced this action against Defendants

Susan Barrett, Peter MacQueen, Patricia Lambert, Andie Cavanaugh, and Yolanda Rios

("Defendants"), alleging defamation (Count I), and Intentional Infliction of Emotional

Distress (Count II). (Dkt. No. 1). The actions giving rise to the dispute involve postings made

by Defendants on Facebook.com and Craigslist.org. *Id.* Before the Court is Defendants'

motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. (Dkt.

No. 6)  For the reasons detailed herein, the motion will be granted.

# I. PERSONAL JURISDICTION

## A. Generally

Plaintiffs bear the burden of establishing that personal jurisdiction exists. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the pleadings and affidavits are considered in a light most favorable to the plaintiff. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). Plaintiff must make a prima facie showing that jurisdiction is proper. *Id.* This burden can be met by establishing sufficient contacts in the forum state with reasonable particularity. *Neogen,* 282 F.3d at 887. Dismissal in this procedural posture is proper if all the facts Plaintiff alleges fail to state a prima facie case for jurisdiction. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir.1996).

A federal court's exercise of personal jurisdiction in a diversity of citizenship case in Michigan must be both authorized by Michigan's long-arm statutes, and in accordance with the Due Process requirements of the Fourteenth Amendment. *Neogen*, 282 F.3d at 888 (citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir.1994)).

This case concerns statements posted online by Defendants, all of whom live in North Carolina. One statement was posted to Craigslist.org, and the remaining twenty-four statements at issue were posted to Facebook.com (Dkt. No. 1). The statements precipitated from Plaintiffs' involvement in the sheltering, and subsequent adoption, of a runaway pet

dog. They refer to Plaintiffs' business practices concerning the operation of their animal shelter, allege criminal acts, question Plaintiffs' integrity and morality, and express a hope that Plaintiffs will cease their business operations. *Id*. This Court must determine whether these statements, made by North Carolinian Defendants, in North Carolina, concerning a local North Carolinian controversy, justify exercising personal jurisdiction in Michigan over Defendants.

## B. Michigan's Long-Arm Statutes

### 1. General Jurisdiction

Pursuant to Michigan's Long-Arm Statute, one is subject to general jurisdiction in Michigan if one has been served with process, is domiciled, or consents to be sued in the state. Mich. Comp. Laws § 600.701. It is undisputed that none of these conditions apply to Defendants here, thus, exercising general jurisdiction would be inappropriate in this case.

### 2. Specific Jurisdiction

Michigan allows exercise of limited jurisdiction where an act arises out of one of seven relationships with the state, including business dealings, property possession, and domicile location. The only condition upon which Plaintiffs rely in this case is the second - the "effects doctrine" - which states that specific jurisdiction is proper in Michigan, following: "[t]he doing or causing an act to be done, or causing consequences to occur, in the state resulting in an action for tort." Mich. Comp. Laws § 600.705. Neither party disputes that only this second condition applies in this case, so it is this condition to which we turn our attention.

A case relying on the effects doctrine is one which relies on the consequences caused by tortious activity to establish sufficient contacts such that Michigan is a proper forum state. When such a case is brought in Michigan, Plaintiff must prove that (1) Defendants acted intentionally, (2) Defendants' action was expressly aimed at the State of Michigan, and (3) that the brunt of the injuries were felt in Michigan. *Audi AG & Volkswagon of Am., Inc. V. D'Amato,* 341 F.Supp.2d 734, 746.

Plaintiffs assert that the statements made by Defendants caused "severe emotional distress, as well as a serious negative financial impact on their business, . . . a business with operations in the State of Michigan." (Dkt. No. 14). Only one of the plaintiffs resides in Michigan (Dkt. No. 1); and a corporation cannot feel emotional distress. Therefore, when this court examines the Intentional Infliction of Emotional Distress ("IIED") claim under the second condition of Michigan's Long-Arm Statute, we will consider only the alleged emotional distress of Plaintiff Mary Jo Thomas.

There has been no refutation that Defendants posted the statements intentionally, so the first prong of the effects test is met. As with the rest of the effects doctrine, we examine the "expressly aimed" requirement with caution, as plaintiffs will always feel the effects of an injury in their home state. *Audi AG,* 341 F.Supp.2d at, 746. Defendants' passing mention of Michigan, on a website dedicated to a local controversy in North Carolina, is too tenuous a connection to qualify as being expressly aimed at Michigan, but even if that were not so, the facts of this case are also insufficient to satisfy the third prong of the effects test.

The third prong of this test requires that the brunt of the injuries were felt in Michigan. Plaintiffs' complaint alleges that Plaintiffs suffered "severe and serious emotional distress." (Dkt. No. 1). This general allegation that all Plaintiffs suffered emotional distress does not allege with reasonable particularity what injuries were felt in Michigan. Only one of the plaintiffs lives in Michigan, but lacking any further specificity, Plaintiffs have failed to allege the injuries in Michigan with reasonable particularity. Moreover, each mention of Plaintiffs in the postings is within the context of an attempt to sully their professional reputations regarding their business dealings, and do not particularly address the direct intentional infliction of emotional distress toward any of the individual plaintiffs, much less the one plaintiff domiciled in Michigan. Plaintiffs have failed to show that the brunt of the injury was felt in Michigan. Having failed to show that the brunt of the emotional injury was felt in Michigan, Plaintiffs have not successfully made a prima facie showing that Defendants caused Plaintiffs to suffer emotional distress in Michigan.

In addition to emotional distress, Plaintiffs also allege economic loss. (Dkt. No. 1, at ¶25). Plaintiffs contend that they experienced a "serious negative financial impact on their business [Seven Star Sanctuary and Rescue, Inc.], . . . a business with operations in the State of Michigan." (Dkt. No. 14). Though the company is now licensed to transact business in Michigan, that was not the case when the relevant comments were posted. (Dkt. No. 15 Exhibit. A). When the comments were posted online, Plaintiffs' company was merely pursuing the establishment of operations in Michigan. Though Plaintiffs argue that

"Defendants knew they were targeting a business with operations in Michigan," (Dkt. No. 14, at 17), this is not reflected in their complaint, which quotes Defendant Susan Barrett's comment that "Mary Jo Thomas *is starting* her own no kill shelter in Michigan." (Dkt. No. 1, at 5)(emphasis added).

Seven Star Sanctuary is clearly not a company located solely in Michigan, and it is debatable whether it had a location in Michigan at the time the comments in this case were posted. But even if we assume Seven Star Sanctuary had a recognizable business presence in Michigan when Defendants' comments about Plaintiffs' business were made, they were directed at Plaintiffs' locations outside of Michigan. The brunt of any injury to the Plaintiffs' operations occurred outside of Michigan, primarily in North Carolina, where the controversy pertaining to Plaintiffs' business operations arose. Defendants' comments were targeted at North Carolina, rather than Michigan, and thus, the brunt of any and all injury was not felt in Michigan. *Lifestyle Lift Holding Co., Inc. v. Prendiville,* 768 F.Supp.2d 929 (E.D.Mich., 2011). Plaintiffs have failed to establish, with reasonable particularity, sufficient minimum contacts with the state of Michigan to make a prima facie case for personal jurisdiction under Michigan's Long-Arm Statutes.

### C. Fourteenth Amendment

Even if Defendants' conduct satisfied the Michigan Long-arm Statutes, the Court cannot exercise personal jurisdiction unless the conduct also satisfies Due Process under the Fourteenth Amendment. To exercise personal jurisdiction, the Fourteenth Amendment

requires sufficient contacts with the forum state such that traditional notions of fair play and substantial justice are not offended. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154 (U.S. 1945). This requires an analysis using these three criteria:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Bird v. Parsons,* 289 F.3d 865, 874 (6th Cir. 2002) (quoting *Southern Mach. Co. v. Mohasco Industries, Inc*., 401 F.2d 374, 381 (6th Cir. 1968)).

## 1. Purposeful Availment

In jurisdictional disputes where defamatory statements have been made on a website, such as in this case, there are two tests commonly applied to determine whether defendants purposefully availed themselves of the privilege of acting in the forum state,: the *Calder* effects test, and the *Zippo* sliding scale test. *Calder v. Jones,* 465 U.S. 783 (1984)*; Zippo Mfg. Co. v. Zippo DOT Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D. Pa. 1997). Plaintiff has not met the requirements put forth in either test.

The *Zippo* test relies on the level of interactivity of the website in question. A website, such as the Facebook page in this case, can be considered purposeful availment of the privilege of acting in a forum state "if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen,* 282 F.3d at 890 (*citing Zippo,* 952 F.Supp. at 1124). Defendants' Craigslist post was merely "[a] web site that does

little more than make information available to those who are interested in it." *Zippo,* 952 F.Supp. at 1124. Therefore the Craigslist post qualifies as passive, and falls short of purposeful availment.

Plaintiffs contend that the Facebook page was not simply a posting of information to be read by visitors to the site, because Defendants intended to interact with Plaintiffs. (Dkt. No. 14). The opportunity to comment on, "like," or "share" Facebook posts does very little to move Defendants' page farther up the continuum from passive to interactive. Although these features make a page slightly more interactive, Defendants' site lacked a commercial nature, and additional interactivity was absent. This means that, as above, the Facebook page "does little more than make information available," and qualifies as a passive site. *Zippo,* 952 F.Supp. at 1124.

Plaintiffs argue that Defendants intended for the information they posted to have an effect on Plaintiffs in Michigan, and that this qualifies as interaction. However, the hope that results will later transpire as a result of posting information online does not make the site on which it is posted any more or less interactive.

The alternative test when considering personal jurisdiction in cases such as this, the *Calder* effects test, focuses not on a website's interactivity, but on the effects the conduct at issue had in the forum state. In *Calder*, Petitioners "wrote and edited an article that they knew would have a potentially devastating impact upon respondent, and they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and

8

in which the magazine has its largest circulation." *Calder,* 465 U.S. at 783-784. The analysis of any effects Plaintiffs encountered in the state does not differ from our analysis done in this regard under Michigan's Long-Arm Statute. Only one of the plaintiffs lives in Michigan, the brunt of the injury was not felt in this state, and any effects on Plaintiffs' business can reasonably be understood to have centered in North Carolina.

Additionally, Plaintiffs claim that the very nature of the internet means that they were defamed to a much wider audience than the plaintiff in *Calder.* (Dkt. No. 14, at 13). This is simply not true. In *Calder*, roughly twelve percent of the tabloid's readership was located in the forum state - that is, roughly 600,000 subscribers. *Calder,* 465 U.S. at 1484. The mere possibility that the website may be viewed by anyone in the world with internet access does not mean that Plaintiffs feel a worldwide effect. Defendants' statements were made regarding a local issue, and was viewed almost exclusively by individuals in North Carolina. *Calder* did not assess the number of people who *may* have seen the defamatory article in passing, only the actual subscriber base in the forum state. *Id.* Similarly, only the *actual* audience rather than the potential audience should be considered here. In the end, as stated in the analysis of Michigan's Long-Arm Statute, the facts do not indicate that sufficient effects occurred in Michigan to qualify as purposeful availment. Therefore, there has been no showing of purposeful availment under the *Zippo* sliding scale or the *Calder* effects test.

**2. Arising from Action or Consequences in Michigan**

After examining whether Defendants purposefully availed themselves of the privilege

of acting in the forum state or causing a consequence in the forum state, we look to the second criterion of the Due Process analysis - whether the cause of action arises from Defendants' activities in Michigan. Neither party contends that Defendants acted in Michigan, rather, we examine whether this controversy arises from *consequences* occurring in Michigan due to Defendants' actions in North Carolina. The consequences which have allegedly arisen from Defendants' actions, have already been amply analyzed under both the *Calder* effects test and Michigan's Long-Arm Statutes. Plaintiffs have failed to make a prima facie showing of sufficient consequences in Michigan to justify an exercise of personal jurisdiction.

### 3. Substantial Enough Connection to Make Exercise Reasonable in Michigan

The third and final step in the Due Process analysis is to determine whether substantial enough connection exists with the forum state such that it would be reasonable to exercise personal jurisdiction over Defendants. In this case, the connection is tenuous between North Carolina Defendants posting about a North Carolina issue, on a web page viewed almost exclusively by individuals in or near North Carolina, intending to dissuade Plaintiffs from acting in North Carolina. The Court finds that a connection this tenuous fails to satisfy the third criterion for a number of reasons. None of the Defendants do business with Michigan, nor have any of them even been to Michigan in over a decade; the statements at issue were made in North Carolina, intended for, and almost exclusively viewed by a North Carolina audience; only one of the plaintiffs resides in Michigan; and Seven Star Sanctuary,

which  has its main operations outside of Michigan, was not yet licensed to do business in Michigan when the statements were made.  Accordingly, it would be unreasonable to exercise personal jurisdiction over Defendants.  Plaintiffs have failed to show that personal jurisdiction would be proper in Michigan under the Due Process clause of the Fourteenth Amendment.

## II. <u>CONCLUSION</u>

For the above reasons, this Court finds that exercising personal jurisdiction over Defendants would be improper under both the Due Process requirements of the Fourteenth Amendment, and Michigan's Long-Arm Statutes.  Plaintiffs have failed to demonstrate that Defendants' Facebook page was sufficiently interactive to establish purposeful availment in Michigan, that Defendants' actions were sufficiently focused on Michigan to purposefully avail themselves of acting or producing consequences in Michigan, or that the brunt of any alleged injury was felt by Plaintiffs in Michigan.  Therefore, exercising personal jurisdiction over Defendants would be inappropriate.  Accordingly, Defendants' motion will be granted.

An order consistent with this opinion will be entered.


Dated: <u>July 19, 2012</u>                              /s/ Robert Holmes Bell_____
                                                      ROBERT HOLMES BELL
                                                      UNITED STATES DISTRICT JUDGE